In re Assignment of D. E. Baker Lumber Company.

Charles Wood, Appellant, v. Lyman Wood,

Appellee.

**BILLS AND NOTES:** Payment and Discharge—Corporation Debts. Evidence reviewed, and held to show that a note on which claim was made was the personal debt of the maker, and not a corporation debt.

*Appeal from Tama District Court.*—James W. Willett, Judge.

July 2, 1919.

The action was tried in equity. The controversy arose over a claim filed by appellant against the assignee, and the estate of the D. E. Baker Lumber Company. Objections were filed by the assignee and certain creditors and stockholders of the lumber company. The claim was disallowed by the trial court, and claimant, plaintiff, appeals. —*Affirmed.*

*C. H. E. Boardman,* for appellant.

*Struble & Stiger,* and *Thomas & Thomas,* for appellee.

Preston, J.—On November 15, 1915, the D. E. Baker Lumber Company made an assignment for the benefit of its creditors, the property assigned being its lumber yards in Traer, Dinsdale, and Clutier, the real estate on which same were located, and its business, notes, accounts, etc., all in the value of more than $60,000. Plaintiff's claim is in the form of a note, given May 21, 1915, for $4,479, signed by the lumber company. This note was given in renewal of two notes signed by D. E. Baker, one for $1,500, dated August 23, 1911, and one for $3,000, dated May 1, 1912. The two original notes above described were the individual notes of D. E. Baker, but the plaintiff claims that the corporation received the benefit thereof; while appellee contends otherwise, and that, though D. E. Baker signed the name of the lumber company, he was coerced into doing so, and that the note in suit was given for the private debt of D. E. Baker. Appellant's claim and theory of the case, stated as

briefly as may be, is that the D. E. Baker Lumber Company, while technically a corporation, was, in fact, D. E. Baker; that he conducted its affairs; that he was its manager, board of directors, and the whole corporation; that he owned or controlled all the stock, and managed its business as an individual enterprise; and that, when the corporation permitted Baker to handle its affairs as he pleased, the same as though he was the corporation, it thereby, by implication, granted to him all the authority necessary in the premises. They concede, however, that, were this an ordinary corporation, with officers elected and acting in the usual way, if claimant loaned D. E. Baker individually the $4,500, and then accepted a corporation note in payment of his individual debt, plaintiff could not recover, at least without showing authority from the corporation. The legal propositions, and the authorities cited by appellant to sustain them, are based upon the assumption that their theory, as before stated, is sustained by the testimony; and if the facts are not as assumed, then, of course, the authorities do not apply. After all, it is very largely a question of fact, and it is conceded that the only question in the case is whether or not the claim is the debt of D. E. Baker.

The only witnesses testifying for plaintiff are the plaintiff himself and D. E. Baker, and at some points there is a conflict in their testimony. One witness testifies for the defendant, but the case largely depends upon the testimony of plaintiff's two witnesses. We think appellant, in selecting isolated statements of witness Baker, has, in some instances at least, misconstrued his testimony. Taking the evidence altogether, and after reading the entire record, we think appellant's contention as to the facts is not sustained by the evidence. We shall not attempt to set out the evidence at any considerable length.

It may be that we should have stated the objections filed. They are, in substance, that the note was never ex-

ecuted by the corporation, nor was it the indebtedness of the corporation; that it was without consideration on the part of the corporation; that the claim for which the alleged note was taken, was the individual claim against D. E. Baker, and not against the lumber company, and that it was taken in an effort to secure an apparently good note and claim against the said corporation, for the purpose of collecting the obligation that D. E. Baker owed personally to the claimant; and that the note was not issued or taken in good faith; that it is not a bona-fide claim, but was issued and taken for the purpose of diverting the funds of the corporation to the payment of an individual claim against Baker, and is illegal, without consideration, fraudulent, and, therefore, not a valid claim against the estate; and further, that the pretended note was secured by plaintiff by a conspiracy between him and Baker, for the purpose of converting the personal debt of Baker into an apparent obligation of the corporation. An amended claim was filed, to which objections were also filed, asking an equitable accounting and marshaling of the assets; but, as said, the vital point in the case is whether the note should be considered as the debt of Baker or of the lumber company, and this is the point argued and relied upon.

Some of the facts are not disputed. Some of the more important facts which are either undisputed or are sustained by the evidence are that D. E. Baker started in the lumber business at Traer in 1885, in partnership with another man, for a year or two, and then Baker ran the business alone, to about 1901. Thereafter, and until 1906, one or two other parties were in partnership with Baker. Baker individually owned the real estate. When one Warfield bought into the firm, in 1906, the business was regularly incorporated as a corporation for pecuniary profit, Baker and Warfield each buying in one half the stock; and the board of directors consisted of those two. In 1910,

Baker bought Warfield's stock, and at that time, there was approximately $20,000 of the stock held by others. Thereafter, the board of directors consisted of D. E. Baker and Ralph L. Baker, his son. The paid-up capital stock was $58,000, of which D. E. Baker owned $38,600, and Ralph Baker, $1,000. The balance, or $18,400 of the stock, was owned by other stockholders, including the objecting stockholders. The principal office of the corporation was at Traer, with branches at Dinsdale and Clutier. As said, the real estate on which the business was carried on and the buildings were owned by Baker himself, during all the time and for a considerable while after the corporation was formed; he collected rent thereon from the partnership or the corporation, at $110 a month, until the Clutier property was sold by Baker, and another property purchased there, with corporation funds; and thereafter, rent was paid upon the Dinsdale and Clutier properties only, until November, 1914, when Baker conveyed the real estate in Traer and Dinsdale to the corporation, by warranty deed. The consideration for this transfer was $20,000, and credit was given upon Baker's account with the corporation for that amount. This appears to have been substantially the value of the real estate, and perhaps a little more. The corporation paid Baker a salary, and this, with his rents, was credited to his personal account. Baker had no personal account at a bank, and money borrowed by him went into the lumber company's account, credit being given him for the same. When he drew his salary, rents, etc., he drew the firm's checks to himself, and charged them upon his ledger account. His household expenses and the like were paid with checks of the corporation, running to him and then endorsed by him. The public bought lumber of the lumber company, and made checks payable to the lumber company. Occasionally, though not often, they were made to Baker. Wholesale houses dealt with the concern as D. E. Baker

Lumber Company. It is true that, for several years, plaintiff made his checks payable to Baker, but this was during the time that there were others associated in the business with Baker, first as partners, and later as stockholders, and Wood knew of the partnerships and of the corporation. At one time, he took stock of the corporation as collateral upon a loan. After Warfield withdrew, both D. E. Baker and Ralph Baker participated in the management, although D. E. was the general manager, and conducted the principal business of the corporation. Plaintiff testifies that the concern was supposed to be the D. E. Baker Lumber Company, but all was done by D. E. Baker. Baker may have claimed, at times, to plaintiff that he was the whole thing, and that the business was generally known as an individual business, but says that he was the manager, president, and the whole thing in the business, adding, "That is, I was the manager and president." But he also says that the business of the D. E. Baker Lumber Company was not, in fact, conducted under his own name, but that, nearly every time they wanted to do a corporate act, there was a meeting of the stockholders or directors. Baker had no other business, and, so far as the record shows, all he accumulated went into the real estate and the stock in this corporation. In a sense, it may be true, as contended by appellant, that originally Baker put everything into the lumber business; but under the record, it was not all put into the Baker Lumber Company business, in the sense contended for by appellant. He also owned a residence property, upon which there was a mortgage of $8,000; he owned timber stock, in which he had invested $5,000, and considerable life insurance. He had been a steady borrower, and in large sums. He borrowed large amounts from plaintiff, upon his individual notes. A considerable amount of this borrowed money was of long standing. The homestead mortgage was six years old; and a $3,000 note to a bank was given in 1899,

when Baker built the brick building on his Traer lots. This note had been carried and renewed, from time to time, but never reduced. There was an old real estate mortgage upon his Traer business property, amounting originally to $4,000, which, according to the report of the assignee, went to foreclosure. Without going further into details, it appears that Mr. Baker was running behind financially, until, in November, 1914, he had overdrawn his ledger account with the company, so that he owed the corporation, on its books, $21,000; and he says that he came to himself, one day, and when he discovered that condition, he consulted with his son, and conveyed all his property to the company, at the agreed price of $20,000, and took credit upon the books for that amount, and further:

"Q. And when you told Mr. Boardman they got the benefit of these private loans of yours, you mean that they got it by reason of your wiping out the debt that you owed the company? A. Yes, sir; the account I kept was a straight and correct account of what I received and what I paid back to the company. The corporation didn't get the benefit when I credited myself for what I owed the company."

After the filing of the foregoing deed, and in 1915, plaintiff says it was rumored that Baker personally was in financial trouble, but that he and everybody thought he was good before that, and that, for a year before that, he made up his mind that Baker was not good personally, and plaintiff began to look about to get his loan paid or secured. The corporation itself borrowed money in two instances, about 1915, for a total of about $6,500. It was thought these loans would relieve the pressure on the company. The company did give notes, from time to time, to settle lumber bills; but it does not appear from the record that its financial standing was questioned until the spring of 1915, when financial reverses brought matters to a crisis. Judgments

were taken against the company, upon some of which execution issued; and the real estate of the corporation was sold in July, 1915. An attempt was made by the stockholders to sell the company's assets, but this failed, and the corporation made the assignment for the benefit of the creditors. In the meantime, loans had been made by plaintiff to Baker personally, as before stated. It should have been said that the $3,000 note was to run three years, which would bring its maturity to about May, 1915, at which time Baker was not good financially.

The negotiations leading up to the last loan seemed to have contemplated security, and Baker had agreed to furnish Wood collateral, a part of which collateral, to be furnished, was stock of the lumber company. It appears that, at other times, Baker had put up stock of the corporation as collateral to his individual loans. It appears that, on May 21, 1915, plaintiff went to Baker's place of business, and, according to Baker's testimony, plaintiff wanted the $3,000 note and the $1,500 note put into one note, with Baker's son's signature added,—a private note; and that plaintiff's request was complied with, and Baker delivered the note to plaintiff; that plaintiff took the note away with him, and surrendered the two old notes. Baker testifies further:

"The next morning, he came back, and said he wanted the company note. I said it wouldn't make much difference to him; that it wouldn't be any different from the other; that it was not a company debt; and that it was my private affair. At that time, he said he would put me behind the bars if I didn't give him the company note. At that time, I added 'L. Co.' opposite my name and opposite my son's name."

This is testimony introduced on behalf of plaintiff. Wood denies a part of this transaction; denies that he threatened Baker, and that Baker told him that it was not

a company debt.  But we think Baker is corroborated by
the other circumstances, some of which are that plaintiff,
at that time, knew that Baker personally was not good
financially, and was trying to secure his claim, and another
circumstance that, a month or so after the assignment,
Wood wrote Baker a letter, in which he refers to the $4,500
as having been loaned to Baker and his son, and accuses
Baker of having obtained the money under a misrepresenta-
tion; and in this letter Wood stated that, if he had to lose
this money, he would put Baker behind the bars.  As to
this transaction, Baker further testifies, by way of explana-
tion of his acts:

"At that time, everyone was pushing me, and that prop-
osition was brought about, not by threats, perhaps, but a
drowning man will do things, perhaps, that ought not to
be done."

Appellee contends that Baker, having been coerced in
this manner to give the note in suit by the plaintiff, may
not now hold the corporation on the ground of equitable
estoppel.

The two old notes given by Baker to plaintiff seem never
to have been recognized as notes of the corporation, but
were considered by the corporation, by Baker, and by Wood,
as personal debts of Baker's, up to the time Wood demand-
ed the new note, which was given under the circumstances
before set out.  When the assignment was made, Baker
states, in the list of claims filed, that the note is not a valid
one; and after Wood had filed his claim with the assignee,
it was objected to by the assignee as not binding upon the
corporation.  It is shown that, if plaintiff's claim is al-
lowed, it will exhaust the assets, and the general creditors
will have received 85 per cent of their claim, and the stock-
holders nothing.  If it is not allowed, it will leave enough
to pay the general creditors, and leave about $2,000 for the
stockholders.

We have not attempted to set out all the evidence; but from the entire record we are satisfied that, as to the plaintiff, the corporation entity was fully distinct as to him, and as to the corporation creditors, the creditors dealt with the corporation as a corporation, and knowing it was a corporation. Plaintiff dealt with Baker, knowing that he was an individual, holding the larger part of the stock of the corporation. It seems to us, then, that, under the facts before set out, and the entire record, plaintiff's claim was not in any sense a corporation debt, but was the personal debt of D. E. Baker; and if this is so, the case comes within the rule under which plaintiff concedes, as before set out, that plaintiff cannot recover. Under these circumstances, it would appear unnecessary to discuss the legal propositions, and the authorities cited by both the appellant and the appellee. Our conclusion is that the trial court rightly decided the matter, and the judgment is— *Affirmed.*

LADD, C. J., EVANS and SALINGER, JJ., concur.